UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ROBERT JOHN WALLING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-17-884-CG |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **OPINION AND ORDER**

Plaintiff Robert John Walling brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 13, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his DIB and SSI applications on September 30, 2013; his alleged disability-onset date was ultimately amended to, June 29, 2013. R. 20, 42, 233-54.

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

Following denial of his applications initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on December 15, 2015. R. 37-79, 133-37, 138-41, 144-46, 147-49. The ALJ issued an unfavorable decision on March 24, 2016. R. 17-30.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 29, 2013, the alleged disability-onset date. R. 22. At step two, the ALJ determined that Plaintiff had the severe impairments of status post remote right ankle surgery, status post right inguinal hernia repair, left thumb injury status post repair, and degenerative disc disease by history. R. 22-25. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 25.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all his medically determinable impairments. R. 25-29. The ALJ found:

> [Plaintiff] has the [RFC] to lift and carry 50 pounds occasionally and 25 pounds frequently. [Plaintiff] can sit for about six hours during an eight-hour workday and stand or walk for about six hours during an eight-hour workday. [Plaintiff] can occasionally stoop. [Plaintiff] can frequently, but not continuously, handle with his left upper (non-dominant) extremity.

R. 25.

At step four, the ALJ considered the hearing testimony of a vocational expert ("VE") and found that Plaintiff was able to perform his past relevant work as a milk truck driver. R. 29. The ALJ therefore determined that Plaintiff had not been disabled within

2

the meaning of the Social Security Act during the relevant time period. R 29; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), .1560(b)(3); *id.* §§ 416.920(a)(4)(iv), (f), .960(b)(3). Plaintiff's request for review by the Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. R. 1-6; *see* 20 C.F.R. §§ 404.981, 416.1481.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff challenges the ALJ's omission of a fingering limitation from Plaintiff's RFC, as well as the ALJ's failure to discuss Plaintiff's nonsevere mental impairment in his RFC assessment. *See* Pl.'s Br. (Doc. No. 22) at 8-10, 11-13.

I. THE ALJ'S FAILURE TO INCLUDE A FINGERING LIMITATION IN PLAINTIFF'S RFC

Plaintiff objects that the ALJ erred in omitting a left-hand fingering limitation from Plaintiff's RFC, rendering the RFC unsupported by substantial evidence. *See id.* at 11-13. In support, Plaintiff points to Plaintiff's 2011 left-thumb surgery that fused the interphalangeal joint, *see* R. 403-05, 413, and the findings of Jennifer Brown, MD, that Plaintiff had mild clubbing in his distal fingertips and reduced range of motion in his left thumb. *See* R. 422, 426-27. Plaintiff also objects that the ALJ misrepresented Plaintiff's hobbies of painting and papier-mâché to unfairly discredit Plaintiff's testimony regarding the severity of his fingering-related symptoms. Specifically, Plaintiff argues the ALJ ignored Plaintiff's testimony that he performed these hobbies only for short periods of time and only with his right, rather than left, hand. *See* Pl.'s Br. at 12; R. 26, 28, 54, 56.

As noted above, in evaluating whether an RFC determination is supported by substantial evidence, a reviewing court defers to the ALJ's determination so long as there is more than "a mere scintilla of evidence supporting it" and it is not "overwhelmed by other evidence in the record." *Branum*, 385 F.3d at 1270 (internal quotation marks omitted). The possibility of drawing two different conclusions from the same facts "does not prevent an administrative agency's findings from being supported by substantial evidence," and the Court may not "displace the agency's choice between two fairly

4

conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (alteration and internal quotation marks omitted).

The ALJ's finding that Plaintiff can frequently, but not continuously, handle with his left hand but that Plaintiff does not have any fingering limitations is supported by substantial evidence in the record. *See* R. 25. On May 7, 2014, Dr. Brown performed a consultative physical examination on Plaintiff. *See* R. 420-28 (Ex. 4F). Dr. Brown found that the flexion of Plaintiff's left-thumb proximal phalange was 40 degrees out of a possible 70 degrees and that the flexion of Plaintiff's left-thumb distal phalange was zero degrees out of a possible 90 degrees. R. 426-27. However, Dr. Brown also found that Plaintiff could effectively oppose his thumb to his fingertips, could manipulate small objects, and could effectively grasp tools such as a hammer. R. 427. On May 14, 2014, state-agency medical consultant James Metcalf, MD, assessed that Plaintiff had no manipulative limitations. R. 87, 97. At the reconsideration level, state-agency medical consultant Sean Neely, DO, reviewed the record and opined that Plaintiff "has some decreased [range of motion] of the [left] thumb[;] however he is thought to have intact handling and fingering." R. 438. Dr. Neely also found that Plaintiff was limited in handling (i.e., gross manipulation) on his left side but not fingering (i.e., fine manipulation). R. 112, 125. Specifically, Dr. Neely opined that Plaintiff was limited to "[f]requent but not continuous use of [his left] hand [due to] [left-]thumb fusion" and that "[e]xams indicate that use of the [left] hand for fine and gross manipulation is preserved." R. 112, 125. Plaintiff does

5

not challenge the ALJ's assignment of great weight to the assessments of Dr. Metcalf and Dr. Neely. R. 28.

Because more than "a mere scintilla" of evidence supports the ALJ's omission of a fingering limitation from the RFC, the Court may not reverse on this point. *Branum*, 385 F.3d at 1270 (internal quotation marks omitted).

II. THE ALJ'S CONSIDERATION OF PLAINTIFF'S NONSEVERE IMPAIRMENTS

Plaintiff also challenges the ALJ's failure to evaluate Plaintiff's nonsevere mental impairment in the RFC analysis. *See* Pl.'s Br. at 8-10.

A. The Relevant Record and the Written Decision

Plaintiff did not allege disability due to any mental impairment in his DIB and SSI applications. R. 81, 91, 103, 116. In April 2014, however, state-agency psychological consultant Joan Holloway, PhD, determined that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. R. 85-86, 95-96.

Following this assessment, the SSA referred Plaintiff to Stephanie Crall, PhD, for a psychological examination, which was performed in July 2014. *See* R. 432-35. Dr. Crall reported that Plaintiff was "alert, oriented, pleasant, and cooperative throughout the evaluation" and that his speech was "logical, goal-directed, and fully intelligible." R. 432. Dr. Crall noted, however, that Plaintiff "appeared depressed," that his appearance was "somewhat disheveled," and that his "clothing appeared dirty." R. 432. Plaintiff reported to Dr. Crall that he experienced symptoms of depression including "depressed mood on most days, sleep disturbance, loss of interest in previously enjoyed activities, low energy,

6

poor appetite, poor concentration, feelings of worthlessness, and suicidal ideation." R. 432. Plaintiff reported having "difficulty concentrating" and "a tendency to become easily distracted, to lose important items frequently, and to experience difficulty with organizational skills." R. 433. He also reported a history of alcohol abuse, being extremely hyperactive in his youth, and continuing to struggle with impulsive behavior as an adult. R. 433. After performing a mental examination, Dr. Crall diagnosed Plaintiff with major depressive disorder (moderate), attention-deficit/hyperactivity disorder (provisional), and alcohol use disorder. R. 434. Dr. Crall opined that

> [Plaintiff's] ability to engage in work-related mental activities, such as sustaining attention, understanding, and remembering and to persist at such activities was likely adequate for simple and some complex tasks. In the opinion of this evaluator, the presence of depression, physical limitations (i.e. chronic pain), and lack of high school diploma or GED likely interfered with his ability to obtain and maintain competitive employment, however.

R. 434.

In September 2014, state-agency psychological consultant Edith King, PhD, determined on reconsideration of Plaintiff's applications that Plaintiff had mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. R. 109-10, 122-23. Dr. King assessed Plaintiff's mental impairment as nonsevere. R. 110, 123.

At step two of his written decision, the ALJ determined that Plaintiff had the nonsevere impairments of depression and a history of alcohol abuse. R. 22. In accordance with the state-agency psychologists, the ALJ determined that Plaintiff's mental impairment caused mild limitations in his activities of daily living, social functioning, and

7

concentration, persistence, or pace. R. 23-24. The ALJ discussed the state-agency psychological consultants' assessments, as well as Dr. Crall's mental examination and opinion, at step two of his decision, but he did not address them again at any subsequent step in the sequential analysis. *See* R. 24, 25.

B. Discussion

In assessing a claimant's RFC, an ALJ must "consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). As noted, the ALJ found both severe and nonsevere impairments at step two of the sequential analysis. *See* R. 23-24. Specifically, the ALJ determined that Plaintiff's nonsevere impairments included "depression and a history of alcohol abuse." R. 22. Plaintiff asserts that, in contravention to regulatory directive and *Wells*, the ALJ failed to take his nonsevere mental impairment into account when assessing his RFC. *See* Pl.'s Br. at 8-10; 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

In *Wells*, the ALJ had determined at step two that the plaintiff's mental impairments were not severe and had stated that "these findings do not result in further limitations in work-related functions in the RFC assessment below." *Wells*, 727 F.3d at 1069 (alterations and internal quotation marks omitted). Noting that this statement "suggests that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments," the Tenth Circuit held that "the Commissioner's regulations demand a more thorough analysis" for the RFC determination. *Id*. at 1069, 1071.

8

The Court agrees that the ALJ's discussion in this case reflects the type of conflation of the step-two and step-four analyses criticized in *Wells*. Unlike *Wells*, the ALJ did explicitly acknowledge at step two that the limitations identified in the "paragraph B" criteria at step two "are not a residual functional capacity assessment" and that the RFC assessment used at steps four and five "requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)." R. 24. The ALJ failed to present this "more detailed assessment" in the RFC analysis, however. In fact, the ALJ failed to engage in any analysis of mental functions or Plaintiff's nonsevere mental impairment in his RFC discussion, limiting the discussion, instead, solely to Plaintiff's severe impairments. *See* R. 25-29; *cf. Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (distinguishing *Wells* where the ALJ discussed evidence at step four relating to a nonsevere mental impairment).

Further, the ALJ made statements in his RFC discussion that indicated the RFC determination was based solely on limitations caused by Plaintiff's severe impairments. *See, e.g.*, R. 28 ("Therefore, the evidence supports that the claimant experienced some limiting symptoms related to his severe impairments."), 29 ("Therefore, due to the symptoms caused by his severe impairments previously discussed, the undersigned finds that the claimant retained the ability to perform work with the limitations described in the residual functional capacity outlined above."). These statements, in conjunction with the ALJ's complete omission of Plaintiff's nonsevere impairments from the RFC discussion, show that the ALJ impermissibly "relied on his step-two findings" to determine that

9

Plaintiff's nonsevere impairments did not cause or contribute to functional limitations. *Wells*, 727 F.3d at 1069. "[T]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Id.* at 1065. Accordingly, the ALJ's failure to consider the impact of Plaintiff's nonsevere mental impairment in the RFC analysis was error under *Wells* and 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

The resulting question is whether this error may be viewed as harmless. When an ALJ disregards nonsevere mental impairments when assessing a claimant's RFC, such error does not necessarily warrant remand if "the evidence in [the] case does not support assessing any functional limitations from mental impairments." *Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) ("We may employ a harmless-error analysis sua sponte on appeal when, as here, the record is not overly long or complex, harmlessness is not fairly debatable, and reversal would result in futile and costly proceedings."); *see Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (explaining that the application of harmless error is appropriate only under "exceptional circumstance[s]," where "based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

Plaintiff argues that the application of harmless error would be inappropriate because the evidence of record supports a finding of functional limitations related to Plaintiff's difficulties in activities of daily living, social functioning, and concentration, persistence, or pace. *See* Pl.'s Br. at 9-10 (arguing that Plaintiff had difficulties in

"persistence and interacting with supervisors," was observed to have social isolation and a "depressed and disheveled appearance" during Dr. Crall's examination, and testified to "losing jobs due to conflicts with supervisors as well as deficits in concentration and organizational skills"). Plaintiff avers that these symptoms implicate the functional limitations that the VE testified would preclude full-time employment if added to Plaintiff's RFC. *See id.*; *see also* R. 75-76. Specifically, the VE testified that an individual with Plaintiff's RFC who also needed to take "frequent unscheduled breaks," miss two or more days of work a month, or be "off task or off pace up to 20 percent of an 8-hour workday" would be unable to sustain full-time employment. R. 75-76.

Defendant, however, points to Dr. Crall's opinion that Plaintiff's "ability to engage in work-related mental activities, such as sustaining attention, understanding, and remembering and to persist at such activities was likely adequate for simple and some complex tasks." R. 434; *see* Def.'s Br. (Doc. No. 23) at 6-8. At the hearing, the VE opined that an individual with Plaintiff's RFC who was also limited to simple and some complex tasks would be capable of the "operation of transportation equipment" required in Plaintiff's past relevant work. R. 77. Defendant does not contest that a mental limitation to simple and some complex tasks was supported by the record.[2] In Defendant's view,

---

[2] Though the ALJ affords Dr. Crall's opinion partial weight, he does so at step two of the sequential analysis, when determining whether Plaintiff's mental impairment is severe. *See* R. 22. This suggests that the ALJ considered (and weighed) the opinion only insofar as it reflected a judgment about the severity of Plaintiff's mental impairment, not Plaintiff's resulting limitations. *See* 20 C.F.R. §§ 404.1527(a)(1), 416.927. The assignment of partial weight to the opinion does not, therefore, preclude the opinion from serving as substantial evidence that Plaintiff's nonsevere impairment limited him to simple and some complex tasks. Nor did the ALJ discount in his credibility analysis Plaintiff's multiple statements

11

however, the VE's testimony renders harmless any error in omitting this limitation from the RFC, and substantial evidence does not support mental limitations beyond this limitation. *See* Def.'s Br. at 8.

Even assuming a limitation to simple and some complex tasks is the only functional limitation stemming from Plaintiff's nonsevere mental impairment that is supported by substantial evidence in the record, the Court does not find the VE's testimony regarding this impairment sufficient to justify a finding of harmless error. The VE testified only that the additional limitation would not affect Plaintiff's ability to operate transportation equipment, which is merely one transferable skill of a milk truck driver. *See* R. 76-77. The VE did not address whether or in what way the additional limitation might affect the other job duties implicit in Plaintiff's past relevant work. The VE's testimony that the additional limitation would not preclude Plaintiff's performance of *one skill* cannot serve as substantial evidence that it would not preclude Plaintiff's performance of other job duties associated with his past relevant work. *See Winfrey v. Chater*, 92 F.3d 1017, 1024 (10th Cir. 1996) (explaining that when a claimant has a mental impairment, the ALJ must obtain factual information regarding relevant work demands and "'care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety . . . in order to determine if the claimant's mental impairment is compatible with

---

regarding the severity of Plaintiff's mental impairment that support this finding. *See, e.g.*, R. 432-33 (Plaintiff noting difficulty in concentrating, organization, and getting along with management and a tendency to become distracted and lose important items); *see also* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996), *superseded by* SSR 16-3p, 2017 WL 5180304 (eff. Oct. 25, 2017; to be applied to decisions made on or after Mar. 28, 2016).

the performance of such work'" (quoting SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982))).

Accordingly, the Court finds that the ALJ erred in failing to conduct a more particularized assessment of Plaintiff's mental functions in his RFC analysis, that the harmlessness of this error is "fairly debatable," and that remand is, therefore, required. *Alvey*, 536 F. App'x at 794; *see Allen*, 357 F.3d at 1145.

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 25th day of February, 2019.

*[signature]*
CHARLES B. GOODWIN
United States District Judge